IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PAUL FORD and ANN FORD, for
Themselves and all Arkansas
Residents Similarly Situated                                            PLAINTIFFS

v.                                     No. 3:15-cv-206-DPM

CITIMORTGAGE, INC.                                                      DEFENDANT

## ORDER

**1.** CitiMortgage holds the note and securing mortgage on Paul and Ann Ford's home. The Fords fell behind on their monthly payments. CitiMortgage notified them that they were in default, enclosing papers indicating foreclosure was coming and listing various contacts to stop that process. The papers mentioned Wilson & Associates with the note "foreclosure" and gave this law firm's telephone number. Mr. Ford, a lawyer, contacted Wilson & Associates. In turn, on CitiMortgage's behalf, the law firm sent the Fords a reinstatement form.

The form said that the estimated amount to put the loan in good standing by a date certain was $19,583.16. This figure reflected delinquent

payments, late charges, and various foreclosure-related fees. CitiMortgage (through its lawyers) hedged: it said the various amounts were estimates; it reserved the right to change the figures; and it reserved the right to refund the payment if there were errors in the calculation. CitiMortgage also said "if the payment from you is received prior to actually incurring any of the below-referenced fees or costs, any overage will be returned to you promptly." № 1-1 at 70.

The Fords paid the full amount listed by the deadline. As directed, they sent the cashier's check to Wilson & Associates payable to CitiMortgage. Their check included a note: the Fords said the money was "not an accord and satisfaction. Paid under protest and a reservation of rights." № 1-1 at 8. Things rocked on for a few months. CitiMortgage sent another arrearage notice, which it cleared after the Fords contacted CitiMortgage and records were checked. Neither CitiMortgage nor Wilson & Associates refunded any overpayment; and the Fords never asked CitiMortgage or its law firm about getting a refund. Approximately four months after making the reinstatement payment, the Fords had some title work done. Foreclosure proceedings, it turned out, had never started.

-2-

The Fords sued Wilson & Associates. That case began fourteen months after the Fords paid the money and ten months after the revealing title work. The Fords nonsuited that case. Then they filed this one against CitiMortgage.

The Fords ask to pursue an Arkansas-wide class action about unincurred foreclosure-related fees that CitiMortgage demanded, borrowers paid, and CitiMortgage retained. The Fords advance three claims: violation of the Arkansas Deceptive Trade Practices Act; unjust enrichment; and conversion. They don't claim breach of contract. CitiMortgage says that, for various legal reasons, all three claims fail. In the alternative, the lender wants the class allegations struck.

**2.** Two general points. First, the Fords have pleaded enough facts on all the elements of all their claims. This complaint is commendably clear and pointed. The attached exhibits are comprehensive. No more is required on the pleadings front. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). Second, the voluntary payment rule doesn't bar the Fords' claims. As the U.S. Court of Appeals for the Eighth Circuit has noted, the recent Arkansas cases have somewhat softened this doctrine. *Curtis Lumber Company v. Louisiana Pacific Corporation*, 618 F.3d 762, 782–83 (8th Cir. 2010), discussing

*Bishop v. Bishop*, 98 Ark. App. 111, 115–16, 250 S.W.3d 570, 573–74 (Ark. App. 2007). Here, the Fords were trying to stay out of court by bringing their debt current. "Your money or your home" justifies paying first and litigating second. Perhaps most importantly, the Fords didn't pay in compromise. There was no danger of misunderstanding. The Fords paid under protest. They reserved their rights, making plain that their check was to stop an imminent foreclosure. Dr. Bishop, on the other hand, made repeated monthly payments, without any formal protest, before seeking court intervention. 98 Ark. App. at 114, 250 S.W.3d at 573. There's another distinction. Unlike the Bishops' creditor, CitiMortgage said it would refund any unincurred fees — fees which were estimates to start with. And the Fords filed their first case about the phantom fees some ten months after the title work revealed that many of those fees apparently weren't incurred. All this is enough to avoid the bar.

**3.** The Fords' ADTPA claim fails as a matter of law. The Arkansas Supreme Court has rejected their reading of this statute. *Arloe Designs, LLC v. Arkansas Capital Corporation*, 2014 Ark. 21, at 6, 431 S.W.3d 277, 281–82. No private right of action exists against CitiMortgage, a regulated entity, in the absence of the Attorney General declining to proceed. The Fords don't plead

-4-

or contend that they sought AG involvement in this case.

**4.** The Fords have an unjust enrichment claim against CitiMortgage. *Campbell v. Asbury Automotive, Inc.*, 2011 Ark. 157, at 20–21, 381 S.W.3d 21, 36–37; RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 35 (2011).

The parties' contract is where the analysis starts, not where it ends. *Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 61–62, 876 S.W.2d 603, 605–06 (Ark. App. 1994); *QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, at 10, 373 S.W.3d 318, 324–25; *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 607 (8th Cir. 1999) (Richard S. Arnold, J.). The mortgage seems to cover the unincurred-fees issue: "If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property . . .. Lender's actions can include . . . paying reasonable attorneys' fees . . .." *№ 1-1 at 29.* The Fords could have pursued a breach of contract claim arising from that provision and the facts. They haven't—perhaps because, as CitiMortgage argues, the Fords' failure to give notice of the breach would torpedo this claim. *№ 1-6 at 200.* Arkansas law

-5-

would, CitiMortgage acknowledges, allow the Fords to claim breach and unjust enrichment in the alternative. *Friends of Children*, 46 Ark. App. at 61. The circumstances here are similar to those in *Applied Pharmacy*. The plaintiff abandoned a breach claim and prevailed on unjust enrichment. The Court of Appeals affirmed. The contract no longer covered the disputed issue; the equitable remedy was identical to the contractual remedy; and there was no good reason to turn the plaintiff out of court. "There is no inconsistency whatsoever, in terms of substance, between the plaintiff's recovery on a theory of unjust enrichment and what it would have recovered had the contract theory been pursued." 182 F.3d at 609.

This Court holds that, if confronted with these facts, the Arkansas Supreme Court would adopt the RESTATEMENT'S section about performing disputed obligations.

> (1) If one party to a contract demands from the other a performance that is not in fact due by the terms of their agreement, under circumstances making it reasonable to accede to the demand rather than to insist on an immediate test of the disputed obligation, the party on whom the demand is made may render such performance under protest or with reservation of rights, preserving a claim in restitution to recover the value of the benefit conferred in excess of the recipient's contractual entitlement.

-6-

(2) The claim described in subsection (1) is available only to a party acting in good faith and the reasonable protection of its own interests. It is not available where there has been an accord and satisfaction, or where a performance with reservation of rights is inadequate to discharge the claimant's obligation to the recipient.

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 35 (2011).

This provision covers the Ford/CitiMortgage circumstances precisely. The Fords' performance wasn't due in fact by the parties' contract. To make sure foreclosure proceedings didn't proceed, the Fords acted reasonably in paying immediately rather than risking their home and going to court. The Fords paid under protest and reserved their rights. There's no indication of bad faith. The Fords were protecting their home. And there was adequate performance of the disputed obligation.

**5.** The Fords have a good conversion claim too. *Grayson v. Bank of Little Rock*, 334 Ark. 180, 188, 971 S.W.2d 788, 792 (1998). Accepting the pleaded facts as true, CitiMortgage never incurred the foreclosure-related fees it made the Fords pay to reinstate the note and cure their default. *Quinn Companies Inc. v. Herring-Marathon Group, Inc.*, is solid authority — as far as it goes. Breaking a contract with malice is not a tort. 299 Ark. 431, 432–33, 773 S.W.3d 94, 95 (1989). But a breach may be a tort too. *Ibid.*

Consider a hypothetical. Smith rents a car from ABC, Inc. for the weekend. He wasn't expecting a convertible, but accepts one and enjoys it. Rather than returning the car on Monday, as promised, Smith decides to head for the beach, start a new life, and keep the convertible as his own. Smith has broken the parties' contract. He's converted ABC's personal property. And he's a thief. But the contract's existence wouldn't bar ABC from suing on the tort.

**6.** CitiMortgage's motion to strike the class allegations, and the Fords' cross-motion for class certification, are denied without prejudice as premature. The law disfavors striking class allegations at the pleading stage. *Daigle v. Ford Motor Company*, 713 F. Supp. 2d 822, 830–31 (D. Minn. 2010). It's too soon to evaluate certification. The Court can't make an informed decision yet. The Court has been delayed in deciding the pending motions; and that's stalled the case. But the parties should consider the surviving claims, conduct some class-related discovery, and develop a record so the Court can evaluate whether a class should be certified. The Court also needs re-briefing in terms of Federal Rule of Civil Procedure 23.

**7.** There are some discovery and scheduling issues. The Rule 26(f) report is noted and appreciated. Counsel should meet and confer in-person about the Wilson & Associates files. Please do so and file a joint report by 18 December 2015 if a dispute remains. Any proposed protective order should be submitted by that date too. A Final Scheduling Order will issue.

\*   \*   \*

Motion, № 3, granted in part and denied in part. The ADTPA claim is dismissed with prejudice. The unjust enrichment and conversion claims go forward. Motion to strike class allegations, № 4, and cross-motion for class certification, № 17, denied without prejudice.

So Ordered.

D.P. Marshall Jr.
United States District Judge

20 November 2015

-9-